UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JANE REINARD, Individually and as
Administratix of the Estate of
DENNIS REINARD,

                 Plaintiff,
   v.                                         **DECISION AND ORDER**
                                                         05-CV-738S

HARSCO CORP. and SHERWOOD/HARSCO,

                 Defendants.

## I. INTRODUCTION

In this case, Plaintiff, the administratrix of her late husband's estate, alleges that the Defendant corporation wrongfully terminated her husband, and thereby caused him to commit suicide. Currently before this Court is Defendant's[1] Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's Motion is granted in its entirety.

## II. BACKGROUND

### A. Factual History

The following facts, which are alleged in the Amended Complaint, are assumed true for the purposes of the instant motion. Mr. Reinard worked as a machinist for Defendant Harsco Corporation ("Harsco") at its facility in Lockport, New York, from September 11, 1978, through May 21, 2003. (Am. Comp., ¶¶ 4, 12, 19). This facility is known as Sherwood-Harsco GasServ ("SHG"). (Am. Comp., ¶ 4). On May 21, 2003, during a lunch break, a Harsco supervisor observed Mr. Reinard, who was 50 years old, and his co-

---

[1] This Motion was brought on behalf of Defendant Harsco Corporation. Harso has argued, and Plaintiff has conceded, that Sherwood/Harsco (also referred to Sherwood Harsco GasServ) is not a legally distinct entity from Harsco and therefore, is not a proper party to this action.

worker, David Easterbrook, who was 30 years old, sitting in Mr. Reinhard's vehicle drinking beer. (Am. Comp., ¶¶ 15, 59, 60). A Harsco representative accompanied Mr. Reinhard and Mr. Easterbrook to Lockport Memorial Hospital for an alcohol and drug test. (Am. Comp., ¶ 48(c)). When Mr. Reinard tested positive for alcohol use, he immediately requested treatment for alcoholism and depression, but the Harsco representative forced him to leave the hospital "against medical advice and without evaluation or treatment." (Am. Comp., ¶¶ 48(c), (d)). Mr. Easterbrook tested positive for marijuana, but not alcohol. (Am. Comp., ¶ 21).

On May 27, 2003, Harsco held a disciplinary hearing during which Mr. Reinard was not represented by counsel or a representative from his union, United Auto Workers Local 686 ("UAW 686"). (Am. Comp., ¶¶ 13, 18). By letter dated May 30, 2003, Harsco notified Mr. Reinard that his employment was terminated effective May 21, 2003. (Am. Comp., ¶ 27). Mr. Easterbrook, who had worked for Harsco for only five years, was not terminated. (Am. Comp., ¶¶ 21, 23).

At the time of Mr. Reinard's termination, UAW 686 represented the SHG bargaining unit of which Mr. Reinard was a member. (Am. Comp., ¶ 13). As such, the terms and conditions of Mr. Reinard's employment were governed by UAW Local 686's Collective Bargaining Agreement ("CBA") with Harsco. (Am. Comp., ¶ 13). The CBA sets forth a broad grievance and arbitration procedure. (Def.'s Mem., Ex. A, pp. 10-21).[2] However,

---

[2]In her Amended Complaint, Plaintiff alleges that Defendant wrongfully discharged Mr. Reinard in violation of the CBA between UAW 686 and Harsco. Plaintiff fails, however, to attach a copy of the CBA upon which she predicates her wrongful termination claim. Accordingly, Defendant has produced the CBA in support of its Motion to Dismiss. Under the circumstances, Defendant's submission of this essential document does not convert its Motion to Dismiss into one for summary judgment. See FED. R. CIV. P. 10(c); Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir. 1991) (holding that where a plaintiff chooses not to attach a document that is integral to his or claims, the defendant may produce the document to attack the complaint for failure to state a claim).

Plaintiff does not allege that Mr. Reinard availed himself of those procedures.

On May 31, 2003, after Harsco advised him of his termination, Mr. Reinard committed suicide. Prior to his death, Mr. Reinard was taking Paxil and Zoloft to treat his depression. (Am. Comp., ¶ 8). On May 25, 2005, the Niagara County Surrogate's Court issued Preliminary Letters Testamentary to Plaintiff, qualifying her as the Administratrix of Mr. Reinard's Estate. (Am. Comp., ¶ 6).

### B.   Procedural History

Plaintiff filed a complaint on behalf of herself and her husband's estate in New York State Supreme Court, Niagara County on May 27, 2005. Defendant removed this case to the United States District Court for the Western District of New York on October 17, 2005. Plaintiff filed an Amended Complaint on January 5, 2006. The Amended Complaint alleges seven causes of action for wrongful discharge, wrongful death, negligence, prima facie tort, intentional tort, violation of the New York Human Rights Law ("NYHRL"), and violation of the Age Discrimination in Employment Act ("ADEA").

On February 3, 2006, Defendant filed the instant Motion to Dismiss the Amended Complaint pursuant to Rule 12 (b)(6).[3] On April 21, 2006, this Court heard oral argument on Defendant's Motion, during which Plaintiff's counsel conceded that: (1) SHG, which is neither a subsidiary nor a legal entity distinct from Harsco Corp., is not a proper defendant

---

[3]In support of its Motion to Dismiss, Defendant filed a memorandum of law with an attached exhibit and a reply memorandum of law. Plaintiff filed a memorandum of law and an affidavit by John E. Ballow, Esq., with an exhibit in opposition to Defendant's Motion. Both the affidavit and the memorandum submitted by Plaintiff contain facts which are not alleged in the Amended Complaint. For example, Plaintiff alleges that at the time of Mr. Reinard's death, his termination letter lay next to his body, and that Plaintiff's expert believes that "Mr. Reinard's untimely death was proximately caused by decedent's disparate treatment and wrongful termination." (Pl.'s Response, p. 17-18; see also J. Ballow Aff., ¶¶ 11, 13). This Court declines to consider these facts in resolving Defendant's motion to dismiss, as neither party seeks to have the instant motion converted into one for summary judgment.

(Tr., p. 3);[4] (2) Plaintiff's intentional tort claims are time-barred pursuant to New York Civil Practice Law and Rules § 215(3) (Tr., pp. 18, 20); (3) Plaintiff's ADEA claim is barred because it has not been exhausted administratively (Tr., p. 19); and (4) Plaintiff's individual claims are not proper because she had no relationship with Harsco (Tr., p. 26).[5] Following oral argument, this Court reserved decision on Plaintiff's remaining claims.

### III. DISCUSSION

#### A. Motion To Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12 (b)(6). When resolving a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996); see also Press v. Quick & Reilly, Inc., 218 F.3d 121, 128 (2d Cir. 2000) (noting that factual allegations in the complaint must be accepted as true on a motion to dismiss). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir.1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)).

In order to survive a motion to dismiss, a plaintiff must assert a cognizable claim and

---

[4] "Tr." refers to the transcript of the oral argument, which took place before the undersigned on April 21, 2006.

[5] In making this final concession, Plaintiff's counsel admitted that Plaintiff only had rights "as an administrator of the estate on behalf of the family" with a singular exception: Plaintiff's "zone of danger" claim. (Tr., p. 26). However, the Amended Complaint does not assert a zone of danger claim. Moreover, Plaintiff has pleaded no facts that would support such a claim.

allege facts that, if true, would support such a claim. See Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). At the same time, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to survive a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal citations omitted). Ultimately, in the context of such a motion, "[t]he issue is not whether a plaintiff will or might ultimately prevail on her claim, but whether she is entitled to offer evidence in support of the allegations in the complaint." Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 62 (2d Cir. 1997) (Internal citation omitted).

### B. Defendant's Motion to Dismiss

As previously noted herein, the Amended Complaint asserts seven causes of action. Based on Plaintiff's concessions, however, Plaintiff's Fourth, Fifth, and Seventh Causes of Action, which assert prima facie tort, intentional tort, and violation of the ADEA, are dismissed in their entirety. Moreover, all of the remaining claims are dismissed insofar as they are brought in Plaintiff's individual capacity. Finally, SHG is terminated as a party to this action.

With respect to the remaining claims, Defendant argues that: (1) Plaintiff's wrongful discharge claim is preempted and must be dismissed; (2) Plaintiff's wrongful death and negligence claims are barred by the New York Worker's Compensation Law; (3) Plaintiff fails to state a prima facie claim of age discrimination under the New York Human Rights Law; and (4) in the alternative, all of Plaintiff's remaining claims fail because Mr. Reinard's discharge was not the proximate cause of his suicide. This Court will address each remaining cause of action in turn.

### C.   Wrongful Discharge

In her First Cause of Action, Plaintiff alleges that Defendant violated the CBA by terminating Mr. Reinard without cause. It is axiomatic that "when resolution of a state law claim is substantially dependent upon an analysis of the terms of a collective bargaining agreement, that claim must either be treated as a § 301 claim [under the Labor Management Relations Act of 1947 ("LMRA")] or dismissed as preempted by federal labor-contract law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 202, 105 S. Ct. 1904, 1907, 85 L. Ed. 2d 206 (1985).

By its express terms, Section 301 of the LMRA applies to suits for "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). As a general rule, only a union may bring an action against an employer for violating their labor agreement. See Gutierrez v. United Foods, Inc., 11 F.3d 556, 559 (5th Cir. 1994). However, "Section 301 contemplates suits by and against individual employees as well as between unions and employers." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562, 96 S. Ct. 1048, 1055, 47 L. Ed. 2d 231 (1976). An individual employee has standing to sue his or her employer under Section 301, where the employee seeks to vindicate his or her "'uniquely personal' rights . . . such as wages, hours, overtime pay, and wrongful discharge." Hines, 424 U.S. at 562 (internal citations omitted).

To enforce these "uniquely personal" rights, an employee may bring a direct suit against the employer for breach of the collective bargaining agreement or against his or her union for breach of the duty of fair representation. Hines, 424 U.S. at 562; United Steel Workers of Am. v. Rawson, 495 U.S. 362, 110 S. Ct. 1904, 109 L. Ed. 2d 362 (1990); Int'l Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 107 S. Ct. 2161, 95 L. Ed. 2d 791 (1987).

An employee may also bring a "hybrid" action against the employer and the union. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163, 103 S. Ct. 2281, 2289, 76 L. Ed. 2d 476 (1983). Before an employee can bring suit based on the violation of a collective bargaining agreement, he or she must first exhaust the grievance or arbitration procedures established by that agreement. Clayton v. Automobile Workers, 451 U.S. 679, 681, 101 S. Ct. 2088, 2091, 68 L. Ed. 2d 538 (1981).

In the instant case, the CBA between Harsco and UAW 686, Mr. Reinard's union, sets forth detailed grievance and arbitration procedures.[6] (Def.'s Mem., Ex. A, pp. 10-21). Plaintiff does not allege that Mr. Reinard availed himself of those procedures following his termination. Given that Mr. Reinard committed suicide the day after he learned of his termination from Harsco, it would not be reasonable for this Court to infer that he exhausted the grievance and arbitration procedures prior to his death. Moreover, the Amended Complaint does not assert any facts which suggest that UAW 686 pursued Mr. Reinard's wrongful discharge following his death.[7] Accordingly, Plaintiff's claim for wrongful termination must be dismissed.

   D.   **Wrongful Death and Negligence**

In Plaintiff's Second and Third Causes of Action, she alleges that Defendant wrongfully terminated her husband and prevented him from receiving treatment for

---

[6] When a CBA contains an arbitration clause, as in this case, it is presumed that those procedures will govern grievances related to the terms of the CBA. "Absent an 'express provision excluding a particular grievance from arbitration,' only the 'most forceful evidence of a purpose to exclude the claim from arbitration' will satisfy a party's 'substantial hurdle' to rebut this presumption of arbitrability." Vera v. Saks & Co., 335 F.3d 109, 117 (2d Cir. 2003) (quoting Transit Mix Concrete Corp. v. Local Union No. 282, 809 F. 2d 963, 969 (2d Cir. 1987)).

[7] At oral argument, Plantiff's counsel admitted, "I do have reason to believe that the union may not want to go forward. . . ." Given that over three years have elapsed, this Court finds that it is not reasonable to assume that UAW 686 plans to pursue Mr. Reinard's wrongful discharge claim through the internal grievance and arbitration process. Accordingly, Plaintiff's request that this Court stay these proceedings pending the outcome of arbitration is denied.

alcoholism at the hospital, proximately causing his death. It is well established that the New York State Workers' Compensation Law provides the exclusive remedy to an employee or his dependants when the employee is injured or killed due to the negligence of another employee. In relevant part, Section 11 of the Workers' Compensation Law states that "[t]he liability of an employer [through workers' compensation] . . . shall be exclusive and in place of any other liability whatsoever, to such employee, his or her personal representatives, spouse, parents, dependents, distributees, or any person otherwise entitled to recover damages, contribution or indemnity, at common law or otherwise. . ." N.Y. WORKER'S COMP. LAW § 11.

There is a narrow "intentional injury" exception to the Worker's Compensation exclusivity rule. Blanchard v. Integrated Food Sys., 632 N.Y.S.2d 329, 330 (3d Dep't 1995). To qualify for this exception, however, the "[i]ntentional conduct and deliberate action . . . must be done with the desire to bring about the consequences of the acts." Blanchard, 632 N.Y.S.2d at 330 (internal citations omitted). It cannot be said, based on the allegations in the Amended Complaint, that Defendant terminated Mr. Reinard and ushered him out of the hospital with the intention or desire to bring about his suicide. Under the circumstances, this Court finds that Plaintiff's wrongful death and negligence claims do not fall within the "intentional injury" exception to the exclusivity rule of the Workers' Compensation Law.

Notwithstanding the foregoing, this Court also finds that the allegations in the Amended Complaint do not state a claim for negligence. Even if Mr. Reinard required immediate medical attention for his depression and alcoholism, "New York does not recognize a duty on the part of an employer to provide or procure emergency medical treatment for an employee who is injured or becomes ill on the job." Herman v. Lancaster

Homes, Inc., 536 N.Y.S.2d 298, 300 (4th Dep't 1988) (internal citations omitted) (finding that the defendant general contractor was not liable for negligence where it prevented the plaintiff, a subcontractor's employee, from leaving the job site to seek medical treatment for an eye injury which he sustained on the job).  Even if Plaintiff's negligence claim was cognizable, Plaintiff has not shown that Mr. Reinard's depression or alcoholism rendered him physically or mentally incapable of seeking medical treatment on his own after he was removed from the hospital.  See Herman, 536 N.Y.S.2d at 300.  According to the Amended Complaint, ten days elapsed between Mr. Reinard's drug and alcohol test and his suicide, during which time Mr. Reinard appeared in person for his disciplinary hearing.  For the foregoing reasons, Plaintiff's negligence and wrongful death claims must be dismissed.

    **D.**    **Age Discrimination under the New York Human Right Law**

In her Sixth Cause of Action, Plaintiff asserts that Defendant discriminated against Mr. Reinard based on his age in violation of the New York Human Rights Law and is therefore liable for his suicide.  In support of her discrimination charge, Plaintiff alleges that Defendant terminated Mr. Reinard, who was 50 years old, for consuming alcohol but did not terminate Mr. Easterbrook, who was 30 years old, despite his positive test for marijuana.

A cause of action based on a violation of the New York Human Rights law is subject to the same analysis as a claim brought under the ADEA.  Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist., 374 F.3d 66, 71 n.2 (2d Cir. 2004) (noting that, "[s]ince the New York Human Rights Law statute mirrors the requirements of the ADEA, violation of one necessarily implies violation of the other").  Although a plaintiff must establish a prima facie case of discrimination to prevail, this is "an evidentiary standard, not a pleading requirement."  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510, 122 S. Ct. 992, 997, 152

L. Ed. 2d 1 (2002).  Thus, "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," but need only plead a short and plain statement showing that he or she is entitled to relief.  Id. at 515.

Even if a plaintiff sufficiently pleads a discrimination claim, however, his or her claim may still fail as a matter of law if the causal nexus between the alleged discriminatory conduct and its consequences is impossibly tenuous and remote.  In the instant case, Plaintiff alleges that as a result of Defendant's discriminatory firing, Mr. Reinard committed suicide.  However, an employer, even one which allegedly discriminates against its employee, cannot be held liable for catastrophic consequences that are not "reasonably foreseeable."  See Martinez v. Ketchum Adver. Co., 865 F. Supp. 166, 169 (S.D.N.Y. 1994).

In Martinez, the female plaintiff alleged that her former employer discriminated against her based on sex and fired her, causing her to separate from her husband and to abort her fetus.  Ultimately, the district court concluded that the plaintiff was not entitled to damages under the New York Human Rights Law for her abortion and separation from her husband because her alleged discriminatory discharge was not the proximate cause of those damages.

> Viewing all of the evidence in a light most favorable to the plaintiff, as is required in a motion for summary judgment, it was foreseeable that plaintiff would suffer economic harm after being discharged from her job, but it was not "reasonably foreseeable" that she would abort her fetus or separate from her husband. I know that questions of proximate cause are often left to the jury, but this case stretches the concept of causation to the point where any catastrophic choice by an allegedly wronged employee becomes foreseeable. Among other things, such a definition of "causation" would require a fact finder to disregard completely plaintiff's own intervening free will, and her husband's, exercised over matters far beyond the employment setting that was the arena for the alleged

> wrong. That is simply unreasonable, and summary judgment
> is warranted.

Martinez, 865 F. Supp. at 169 (internal citation omitted).

In the instant case, this Court finds that Plaintiff can prove no set of facts in support of her New York Human Rights Law claim which would entitle her to relief.  Quite simply, to hold Defendant liable for damages arising from Mr. Reinard's suicide would "stretch the concept of causation" beyond that which the law allows.  Martinez, 866 F. Supp. at 169; see also D'Addezio v. Agway Petroleum Corp., 589 N.Y.S.2d 206 (3d Dep't 1992) (dismissing a wrongful death claim brought by the administrator of a deceased employee, who committed suicide after being terminated and investigated for grand larceny and falsifying business records, reasoning that the defendant employer "had a lawful right to act as it did and the acts are 'simply too attenuated to be the proximate cause of decedent's suicidal act'").

Even assuming that Defendant discharged Mr. Reinard because of his age, as a matter of law, it cannot be said that Mr. Reinard's suicide was a reasonably foreseeable consequence of his discharge.  Under the circumstances, this Court declines to endorse a theory of causation that "disregard[s] completely plaintiff's own intervening free will . . . exercised over matters far beyond the employment setting that was the arena for the alleged wrong." Martinez, 866 F. Supp. at 169.  Accordingly, Plaintiff's Sixth Cause of Action, alleging violation of the New York Human Rights Law, must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted in its entirety.

## V. ORDERS

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Docket No. 16) is GRANTED.

FURTHER, that the Clerk of the Court shall take the steps necessary to close this case.


SO ORDERED.

Dated:     September 23, 2006
           Buffalo, New York

                                               /s/William M. Skretny
                                               WILLIAM M. SKRETNY
                                               United States District Judge